A.R., on behalf of her minor child, R.V., M.S., on behalf of her minor child, I.O., M.L., on behalf of her minor child, J.L., Plaintiffs–Appellees,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, Defendant–Appellant.

S.W. and M.M., on behalf of N.W., Plaintiffs–Appellees,

v.

BOARD OF EDUCATION OF THE CITY OF NEW YORK, (District 2), Defendant–Appellant.

Nos. 02–9471 to 02–9473.

United States Court of Appeals, Second Circuit.

Argued: April 21, 2004.

Final submission: May 18, 2004.

Decided: May 10, 2005.

Kristin M. Helmers, Assistant Corporation Counsel of the City of New York (Michael A. Cardozo, Corporation Counsel of the City of New York, Leonard Koerner, Martin Bowe, of counsel), New York, NY, for defendant-appellant in both appeals.

Michael D. Hampden, Legal Services for Children, Inc., New York, NY, for plaintiffs-appellees A.R., M.S., and M.L. in Nos. 02–9471, 02–9472, and 02–09473.

Gary S. Mayerson, Mayerson & Associates (Amanda L. Oren, of counsel), New York, NY, for plaintiffs-appellees S.W. and M.M. in No. 03–7258.

Before: McLAUGHLIN, SACK, and SOTOMAYOR, Circuit Judges.

SACK, Circuit Judge:

█ Under *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), "[e]ssentially, in order to be considered a 'prevailing party' [to enable a plaintiff to take advantage of a federal fee-shifting statute] ..., a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani,* 346 F.3d 75, 79–80 (2d Cir.2003) (quoting *Buckhannon,* 532 U.S. at 603, 121 S.Ct. 1835). Neither *Buckhannon,* nor *Roberson* explaining it, explicitly instructs us, however, how to apply the rule in *Buckhannon* to fees awarded with respect to the state administrative proceedings relevant to this appeal. Nor has the scope of the district court's discretion to determine the amount of such an award been clarified in the context of fees for administrative proceedings.

The plaintiffs-appellees A.R., M.S., M.L., and S.W. and M.M.[1] (collectively the "Parents") instituted four separate New York State administrative proceedings challenging, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* the special educational programs that the defendant-appellant New York City Department of Education (the "DOE")[2] had provided for the Parents' disabled children. In two of the four proceedings, impartial hearing officers ("IHOs") entered decisions for the plaintiffs on the merits.[3] In the two others, IHOs issued "Statements of Agreement and Order" that recorded the terms of settlement agreements between the parties. In one of the two latter cases, the plaintiff requested a second hearing on an additional claim, and an IHO entered an order and stipulation that disposed of that claim.

The IDEA grants courts the discretionary power to "award reasonable attorneys' fees ... [to] the prevailing party" "[i]n any action or proceeding brought under" the IDEA. 20 U.S.C. § 1415(i)(3)(B). Each parent sought, under that provision, to recover the legal fees he or she incurred in pursuing administrative proceedings against the DOE. When their non-judicial efforts proved unsuccessful, the parties brought suit in separate but similar actions in the United States District Court for the Southern District of New York (Constance Baker Motley and Shira A. Scheindlin,

---

1. S.W. and M.M. are, together, the parents of one child involved in administrative proceedings against the New York City Department of Education; A.R., M.S., and M.L. are each a parent of one such child.

2. The Board of Education of the City of New York was renamed the "New York City Department of Education" during the pendency of this action. The caption for the appeal involving S.W. and M.M. uses its former name.

3. New York parents who believe an [individualized educational plan ("IEP")] is insufficient under the IDEA may challenge it in an "impartial due process hearing," 20 U.S.C. § 1415(f), before an IHO appointed by the local board of education, *see* N.Y. Educ. L. § 4404(1). At that hearing, the school district has the burden of demonstrating the appropriateness of its proposed IEP. *See, e.g., Walczak [v. Fla. Union Free Sch. Dist.],* 142 F.3d [119,] 122 [ (2d Cir.1998) ] (collecting cases). The decision of an IHO may be appealed to [a state review officer (SRO) ], *see* N.Y. Educ. L. § 4404(2); *see also* 20 U.S.C. § 1415(g), and the SRO's decision may in turn be challenged in either state or federal court, *see* 20 U.S.C. § 1415(i)(2)(A).

*Grim ex rel. Chelsea v. Rhinebeck Cent. Sch. Dist.,* 346 F.3d 377, 379–80 (2d Cir.2003).

*District Judges* ).[4] The district judges awarded the Parents, as "prevailing parties" under the IDEA, the attorneys' fees that they sought.

Although these two appeals have not been consolidated, because of their similarity we heard them together. To resolve them, we must determine, *inter alia,* whether, through the administrative proceedings for which fees are sought, the Parents each sufficiently achieved a judicially sanctioned "material alteration of the legal relationship of the parties," or its equivalent, sufficient to entitle him or her to legal fees as the "prevailing party" under the IDEA and *Buckhannon,* and whether the fee awards conform to IDEA requirements. We ultimately agree with the district judges and therefore affirm.[5]

## BACKGROUND

The Parents challenged under the IDEA the special educational programs that the DOE had provided for their disabled children.

### The M.S. Orders

M.S. participated in two administrative hearings before an IHO on behalf of her child, I.O. The first concluded when the IHO issued a "Statement of Agreement and Order" that recorded the terms of a settlement agreement between M.S. and the DOE.

The M.S. Agreement and Order, signed by the IHO, recites, in part:

[I.O.'s] parent [M.S.] sought an impartial hearing to obtain compensatory services for him for the remainder of the academic year or until such time as he actually enters a private school. The

parent and student were both present at the hearing, and were represented by counsel. The [DOE] was represented by [the] supervisor of psychologists, ... District 4 . . . .

At the hearing, the parties engaged in extensive discussions held off the record. As a result of these discussions, the parties reached various points of agreement. These were put into the record, with the assent of the parties. [The IHO] issued, where appropriate, orders implementing the points of agreement. These are repeated [in this Statement of Agreement and Order].

*In re I.O.,* Case No. 39106, Statement of Agreement & Order at 2 (Bd. of Educ. of the City of N.Y. Apr. 13, 2000, as corrected Apr. 24, 2000). The Agreement and Order then sets forth the terms of the parties' agreement, principally that I.O. would receive from the DOE (1) the right to attend private school at the district's expense, (2) one-on-one tutoring, therapy, and counseling, and (3) an immediate transfer to a more appropriate public school until I.O. was placed at a private school. The Agreement and Order concludes: "The above points of agreement and orders were issued orally at the hearing, and were fully effective as of the oral issuance. This written Statement of Agreement and Order reiterates and affirms the oral orders and points of agreement." *Id.* at 3.

M.S. then sought another hearing on a separate claim, asserting that the first "hearing and agreement did not address issues relating to prior years, because [M.S.]'s request for the [first] hearing made reference only to the current year." Letter from Michael D. Hampden, Legal

---

4. The fee applications for A.R., M.S., and M.L. were consolidated in the district court before Judge Motley.

5. We remand the cases, however, to permit the Parents to apply for legal fees to which they may be entitled, if any, with respect to this appeal.

Services for Children, Inc., to the New York City BOE, Impartial Hearing Office of Apr. 24, 2000, at 2. On November 6, 2000, in this second administrative hearing, held before a different IHO, the IHO "so ordered" a three-page written Order and Stipulation of the parties setting forth the terms of a settlement agreement between them. The Order and Stipulation provides that M.S.'s son I.O. is entitled to receive from the DOE three years of "compensatory education," to be provided after he graduates or reaches the age of twenty-one, whichever comes first. At a telephonic hearing the same day, transcribed and reduced to a verbatim transcript, the IHO stated that he would order, and thereby give effect to, the terms of the parties' agreement.

| | |
|---|---|
| [IHO]: | Okay, I understand that you've both settled . . . this case? |
| [Lawyer for I.O.]: | That's right. |
| [Lawyer for DOE]: | Yes. |
| [IHO]: | And, you've settled it pursuant to an order and stipulation that the [DOE] faxed me about a half hour ago. Correct? |
| [Lawyer for DOE]: | Yes. |
| [Lawyer for I.O.]: | That's right. |
| [IHO]: | Okay, then at this point, I will so order, and sign the order and stipulation and mark this case as settled. |
| [Lawyer for DOE]: | Great. |
| [Lawyer for I.O.]: | Thank you. |
| [IHO]: | Are there any objections for the [DOE]? |
| [Lawyer for DOE]: | No. |
| [IHO]: | [Inquiring the same of the lawyer for I.O.:] |
| [Lawyer for I.O.]: | No. |
| [IHO]: | Okay, then the order is hereby—I hereby order the stipulation to be put into [e]ffect, and I'll send the paperwork in. |
| [Lawyer for DOE]: | Wonderful. |

Tr. of Hearing, Nov. 6, 2000, at 14–15, *In re I.O.*, Case No. 39486. About a week later, on November 14, 2000, the IHO signed an order dismissing the case.

*The M.L. Order*

M.L. challenged the DOE's treatment of her child J.L. in a proceeding that also culminated in a settlement agreement among the parties. On May 14, 2001, the IHO recited the terms of the agreement orally at the conclusion of a brief administrative hearing. He preceded the recitation with the following observations:

| | |
|---|---|
| [IHO]: | Okay. We had an off the record discussion regarding this matter. I'll just recap some things. . . . . [J.L.]'s supposed to be provided with a bilingual teacher. . . . For some reason, that service hasn't been provided. . . . . . . . So that's why we're here today because . . . [J.L.]'s mother[ ] was asking that the service be provided and that I so order. The [BOE and the lawyers for all parties] [seem to] have . . . come to an agreement. Basically, they're stipulating to an agreement which they have asked me to order. In fact, the stipulation and agreement that I will order will read as follows. . . . |

Tr. of Hearing, May 14, 2001, at 4, *In re J.L.*, Case No. 42736. The agreement was also reflected in a written "Statement of Agreement and Order." The Agreement and Order concluded:

*STATEMENT OF AGREEMENT AND ORDER*

Accordingly, the parties AGREE and it is SO ORDERED, that on an interim basis, the Board pay to . . . a [specified] speech and language therapist, or to any other provider on the Board Related Services Provider list, the fees incurred for providing [J.L.] with monolingual

[English] services three forty-five-minute sessions per week through [a specified date].

*In re J.L.*, Case No. 42736, Statement of Agreement and Order at 2–3 (Bd. of Educ. of the City of N.Y. May 17, 2001). The document was dated and signed by the IHO only. *Id.* at 3.[6]

### The A.R. Decision

In the proceeding that A.R. brought on behalf of her child R.V., the IHO ordered the DOE (1) to determine a new individualized educational plan ("IEP") for R.V., (2) to pay for R.V. to attend private school, and (3) to provide R.V. with one year of additional "compensatory services" to support R.V.'s developing skills to participate in general education. *In re R.V.*, Case No. 42764, Findings of Fact and Decision at 9 (Bd. of Educ. of the City of N.Y. June 14, 2001).

### The S.W. and M.M. Decision

In the hearing that S.W. and M.M. brought on behalf of their child N.W., the IHO ordered the DOE to provide additional behavioral, occupational, and speech therapy for N.W. and to reimburse S.W. and M.M. for the costs incurred in providing such additional therapy prior to the IHO decision. *In re I.O.*, Case No. 39106, Findings of Fact and Decision at 15–16 (Bd. of Educ. of the City of N.Y. Feb. 18, 1999, as amended Mar. 23, 1999).

### Retention of Counsel

Before instituting these administrative proceedings, the Parents all retained counsel to represent them. Two lawyers, Todd Silverblatt and Michael Hampden, associated with Legal Services for Children ("LSC"), a not-for-profit legal services organization that specializes in, *inter alia,* education law, represented A.R., M.S., and

M.L. (the "LSC plaintiffs") in their administrative hearings. LSC did not charge the LSC plaintiffs legal fees. Instead, the LSC plaintiffs assigned to LSC their rights to recover from the DOE under the fee-shifting provisions of the IDEA. That is "how [LSC] obtains a good portion of its funding." *M.S. ex rel. I.O. v. N.Y. City Bd. of Educ.*, Nos. 01 Civ. 4015, 01 Civ. 10871, 01 Civ. 10872, 2002 WL 31556385, at *1, 2002 U.S. Dist. LEXIS 22220, at *4 (S.D.N.Y. Nov.18, 2002). Gary Mayerson represented S.W. and M.M. in their IDEA hearing, *S.W. ex rel. N.W. v. Bd. of Educ. (Dist.Two)*, 257 F.Supp.2d 600, 602, 604 (S.D.N.Y.2003), for which representation he charged them legal fees.

### Request for Attorneys' Fees and District Court Proceedings

Following the completion of the administrative hearings, LSC, and Mayerson on behalf of S.W. and M.M., requested attorneys' fees from the DOE. For the representation of M.S., LSC sought from the DOE a total of $3,225, reflecting 20.5 hours of legal services rendered by Hampden and Silverblatt. Hampden and Silverblatt billed at an hourly rate of $250 per hour for 12.9 hours and offered to provide 7.6 hours of services without charge. For the representation of M.L., LSC sought from the DOE $2,370, which reflected 7.0 hours of legal services, primarily provided by Hampden at a rate of $350 per hour. For the representation of A.R., LSC sought from the DOE $3,458.50, which reflected primarily 9.25 hours of legal services rendered by Hampden at a rate of $350 per hour. For his representation of S.W. and M.M., Mayerson, on behalf of his clients, sought from the DOE $14,747, which reflected 40.4 hours of legal services rendered by Mayerson at a rate of $365 per hour. The DOE refused to pay any of

---

**6.** The signature was followed by boilerplate instructions on procedures for appealing the decision. Statement of Agreement and Order, May 17, 2001, at 3, *In re J.L.*, Case No. 42736.

the fee requests on the grounds that the hourly rates of $250 to $365 per hour were unreasonable.

Thereafter, the Parents filed complaints in the United States District Court for the Southern District of New York claiming that they had been denied attorneys' fees to which they were entitled under the IDEA. On April 30, 2002, after the LSC plaintiffs' cases were consolidated, they moved for summary judgment, seeking a total award of $18,706, of which $13,003.50 represented legal services rendered in the course of the administrative representation of the LSC plaintiffs[7] and $5,702.50 reflected lawyers' fees for the district court litigation for attorneys' fees itself. Together with their summary judgment motion, the LSC plaintiffs included affidavits supporting their assertion that $350 per hour was the hourly "rate[ ] prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In response, the DOE argued, *inter alia,* that the appropriate rate should be between $125 and $175 per hour and submitted affidavits supporting that contention. The DOE also asserted that M.S. and M.L. were not "prevailing parties" as that term is used in the IDEA because they did not succeed on the merits in their administrative hearings. The DOE argued further that M.S. and M.L. were not "prevailing parties" by virtue of the IHOs "so-ordering" their settlement agreements because, the DOE contended, the IHOs did not retain enforcement jurisdiction over the agreements or have the authority to so-order the agreements in the first place. On November 15, 2002, Judge Motley granted the LSC plaintiffs'

motion for summary judgment, awarding them $18,706 in fees. *M.S.,* 2002 WL 31556385, at *6, 2002 U.S. Dist. LEXIS 22220, at *20.

On October 31, 2002, in a separate proceeding before Judge Scheindlin, S.W. and M.M. filed a motion for attorneys' fees, requesting fees for Mayerson's services at a rate of $350 to $375 per hour. The DOE did not contest that S.W. and M.M. were "prevailing parties" as a result of the relief granted them in their administrative proceedings. The DOE asserted, however, that the fees sought were not reasonable, and that a rate of $125 to $190 per hour was proper for the services provided.

On February 26, 2003, the district court granted S.W. and M.M. $10,644.73 in attorneys' fees and related expenses for their administrative hearings. Relying in part on the award of attorneys' fees to the LSC plaintiffs in their action, the court found that $350 per hour was a reasonable rate for Mayerson's legal representation during the administrative proceedings. *S.W.,* 257 F.Supp.2d at 604–05. The court also found that Mayerson "spent a total of 30.2 hours in connection with the administrative proceedings" but reduced this figure slightly because it found that some of the relevant time records were vague or incomplete. *Id.* at 606–07. The court also determined that Mayerson spent 6.8 hours on the fee application process in the district court and that, because Mayerson's expertise had increased since he represented S.W. and M.M. in their administrative proceedings in 1999, the reasonable rate for these services was $375 per hour. *Id.* at 607. The court awarded the plaintiffs $3,998.15 in attorneys' fees [8] and relat-

---

**7.** For the representation in M.S.'s case, the plaintiffs increased their requested hourly rate from $250 to $350, stating that the earlier rate of $250 had been proposed for pur-

poses of expediting a settlement and was not a market rate.

**8.** This amount included, in addition to fees for Mayerson's services, 7.9 hours of an associ-

ed costs in connection with the fee application. *Id.* at 609.

The DOE appeals from both district court decisions. Because of the similarities of the appeals, we heard argument in them together and now decide them together.

## DISCUSSION

### I. The IDEA

The IDEA aims "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). To achieve this goal, "[t]he IDEA requires that states [that receive certain federal funds] offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir.2002); *see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 81–82 (2d Cir.2005). Under the IDEA, a parent may "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). "[T]he parents involved in such complaint shall have an opportunity for an impartial due process hearing," *id.* § 1415(f)(1), which, under applicable provisions of New York State law, is conducted by an IHO. *See* N.Y. Educ. L. § 4404(1).

To further ensure that children with disabilities receive "free appropriate public education[s]" the IDEA provides that "[i]n any action or proceeding brought under [the IDEA], [a] court, in its discretion,

may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Such fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C).

### II. The DOE's Position on Appeal

The DOE challenges the district court's awards of attorneys' fees in four respects. First, the DOE contends that M.S. and M.L. are not "prevailing parties" eligible for attorneys' fees because they did not obtain decisions on the merits in their administrative hearings and because the "so-ordered" settlement agreements, over which the IHOs did not retain enforcement jurisdiction, did not constitute consent decrees. Second, the DOE argues that the "community" for determining the appropriate hourly rate for attorneys' fees should be the community of practitioners who appear before the DOE for IDEA hearings, rather than the community of practitioners in the federal district in which the fee application was commenced. Third, the DOE argues that the district court abused its discretion in determining that rates of $350 to $375 per hour were reasonable for the Parents' counsel's representation with respect to administrative hearings, because such representation "is simply of a different 'kind and quality' than the more sophisticated legal services required to vindicate statutory or constitutional rights in a federal forum." Appellant's Br. at 53, *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*; *see also* Appellant's Br. at 29–30, *S.W. ex rel. M.M. v. Bd. of Educ. (Dist.Two)*. Finally, the DOE asserts that fee disputes in federal court are "ancillary" to the underlying administra-

---

ate's time at a rate of $150 per hour and 0.5 hours of a paralegal's time at a rate of $75

per hour. *S.W.*, 257 F.Supp.2d at 608 n. 9.

tive proceedings, and, consequently, the district court erred in awarding S.W. and M.M. fees at a higher rate for their fee application in the district court than for representation during administrative proceedings.

### III. Standard of Review

 Generally, we review a district court's grant of attorneys' fees under the IDEA for abuse of discretion. *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 123 (2d Cir.2002); *accord Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 402 F.3d 332, 335 (2d Cir.2005). "We review de novo the District Court's interpretation of the relevant fee statute itself[,] ... interpret[ing] the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes." *I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir.2003) (per curiam).[9]

"Because the district court decided th[ese] case[s] at the summary judgment stage, ... we also must reverse its decision[s] if [they] required the resolution of any genuinely disputed material fact."

*G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 80 (2d Cir.1999). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied*, 526 U.S. 1065, 119 S.Ct. 1456, 143 L.Ed.2d 543 (1999).

### IV. Are the Parents "Prevailing Parties"?

*A.* Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources

The IDEA, as noted, contains a fee-shifting provision under which a "prevailing party" may recover attorneys' fees from the party against which it prevailed. *See* 20 U.S.C. § 1415(i)(3)(B). The first question we must address, then, is whether the Parents were "prevailing parties" in the proceedings before the IHOs.

Fee-shifting provisions in federal statutes are not uncommon—"[n]umerous fed-

---

**9.** The legislative history of the IDEA indicates that its fee-shifting provisions were intended to mirror those of 42 U.S.C. § 1988. The fee-shifting provisions of the IDEA were specifically designed to overrule the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which held that parents claiming violations of the IDEA could not obtain attorneys' fees under section 1988. *See, e.g., King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 625 (6th Cir.2000). The legislative history of the fee-shifting amendment to the IDEA also refers to four Supreme Court decisions, *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), each of which involved awards of attorneys' fees under section 1988. *See* 132 Cong. Rec. 17,608 (1986) (statement

of Rep. Williams). Thus, "determinations as to whether a parent is awarded fees *and the amount of the award* are governed by applicable decisions interpreting 42 U.S.C. [§ ]1988." *Id.* (emphasis added).

Recently, in *Murphy, supra*, we addressed the difference between the IDEA's and section 1988's treatment of awards of expert witness fees. We held that under the IDEA, expert witness fees, in addition to attorneys' fees, were recoverable as part of the costs of a litigation, even though such fees are not available under section 1988. *Murphy*, 402 F.3d at 336–37. In holding that the IDEA differed from section 1988 in this respect, however, we did not imply that the IDEA's fee-shifting provisions differed from section 1988 in all respects. We therefore continue to interpret the IDEA's fee-shifting provisions in consonance with section 1988 and other federal civil fee-shifting statutes, unless there is a specific reason—such as with regard to expert fees—not to do so.

eral statutes allow courts to award attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).[10] Until the Supreme Court's decision in *Buckhannon*, this Court and most other United States Courts of Appeals, in interpreting those statutes, often employed the so-called "catalyst theory," *id.* at 601–02 & n. 3, 121 S.Ct. 1835; *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir.2003), which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," *Buckhannon*, 532 U.S. at 601, 121 S.Ct. 1835. "Under the catalyst theory, a court could award attorneys' fees based solely upon a private agreement among the parties settling their dispute, even though no legal relief such as a consent decree had been obtained." *Pres. Coalition v. Fed. Transit Admin.*, 356 F.3d 444, 450 (2d Cir.2004).

The *Buckhannon* Court addressed the validity of the "catalyst theory" in the context of an award made pursuant to fee-shifting provisions of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs."), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205 ("[T]he court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."). *Buckhannon*, 532 U.S. at 601, 121 S.Ct. 1835. The Court observed that judgments on the merits for a plaintiff in a judicial action governed by

such statutes rendered the plaintiff a "prevailing party" and that "settlement agreements enforced through a consent decree may [also] serve as the basis for an award of attorney's fees." *Id.* at 603–04, 121 S.Ct. 1835. The Court explained that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Court held, however, that the "catalyst theory" was not a valid basis for awarding attorney's fees because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. "Private settlements do not entail the judicial approval and oversight involved in consent decrees." *Id.* at 604 n. 7, 121 S.Ct. 1835.

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

*Id.* at 605, 121 S.Ct. 1835 (emphasis in original).

## B. Application of Buckhannon *to Fees under the IDEA*

We begin our analysis of the application of *Buckhannon* to the IDEA on substantial common ground.

---

10. Some statutes, including those with which *Buckhannon* dealt, use the singular "attorney's fees"; some, such as the IDEA, use the plural "attorneys' fees." We use one or the other depending on the statute to which reference is being made. *See NAACP v. Town of East Haven*, 259 F.3d 113, 114 n. 1 (2d Cir. 2001) (explaining the use of the singular form because of the wording of the fee-shifting provisions of Title VII involved in that appeal), *cert. denied*, 534 U.S. 1129, 122 S.Ct. 1068, 151 L.Ed.2d 971 (2002).

*1. Buckhannon's Application to IDEA Fees.* First, the parties recognize that we "interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes." *I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.,* 336 F.3d 79, 80 (2d Cir.2003) (per curiam); *accord Roberson,* 346 F.3d at 79 n. 3; *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.,* 278 F.3d 119, 123–24 (2d Cir.2002). Hence, "the standards used to interpret the term 'prevailing party' under any given fee-shifting statute 'are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party." '" *Id.* at 123 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Those standards include the requirements set forth in *Buckannon.* As we observed in *J.C., "Buckhannon* concerned the fee-shifting provisions of the Americans with Disabilities Act of 1990 ..., 42 U.S.C. § 12205, and the Fair Housing Amendments Act of 1988 ..., 42 U.S.C. § 3613(c)(2), but the decision expressly signaled its wider applicability." *Id.* We concluded in *J.C.* that *Buckhannon* applies to the IDEA. *Id.* at 125; *accord Alegria ex rel. Alegria v. Dist. of Columbia,* 391 F.3d 262 (D.C.Cir.2004); *Doe v. Boston Pub. Sch.,* 358 F.3d 20 (1st Cir.2004).

■ *2. Fees Where an IHO Orders Relief on the Merits.* Second, the parties agree, as do we, that a plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a "prevailing party." He or she may therefore be entitled to payment of attorneys' fees under the IDEA's fee-shifting provisions.

The statute itself requires this conclusion. The IDEA permits a court to "award reasonable attorneys' fees" to a "prevailing party" "[i]n any *action or proceeding* brought under" the statute. 20 U.S.C. § 1415(i)(3)(B) (emphasis add-ed). In the context of the IDEA, "proceeding" refers to, or at least includes, an administrative proceeding. *See, e.g.,* 20 U.S.C. § 1415(i)(3)(D)(i) ("Attorneys' fees may not be awarded ... in any action or *proceeding* under this section for services performed subsequent to the time of a written offer of settlement to a parent if [*inter alia*] ... the offer is made ... in the case of an *administrative proceeding,* at any time more than 10 days before the proceeding begins ... and ... the court or *administrative hearing officer* [makes specified findings] ...." (emphasis added)); 20 U.S.C. § 1415(i)(3)(D)(ii) (referring to attorneys' fees awarded for meetings "convened as a result of an *administrative proceeding* or judicial action" (emphasis added)). We have so read the statute. *See Vultaggio v. Bd. of Educ.,* 343 F.3d 598, 602 (2d Cir.2003) (per curiam) (noting that "the impartial due process hearing is a proceeding 'brought under' § 1415" for purposes of fee-shifting under 20 U.S.C. § 1415(i)(3)(B)).

We agree, then, with the DOE that:

[I]t is well settled that attorney[s'] fees are available to parents who prevail at an impartial due process hearing. This Court implicitly so ruled in *Vultaggio v.* [*Board of Education* ] .... Other Circuits have explicitly held that attorney[s'] fees are available for appearances at an IDEA due process hearing.

DOE's Supplemental Letter Br. of May 12, 2004, at 2, *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.* (citations omitted).

We recognize that the situation before us differs from the one confronted by the Supreme Court in *Buckhannon:* the application of the FHAA's and ADA's fee-shifting provisions to plaintiffs who had brought suit in federal court. Here, by contrast, we consider the operation of the

IDEA's fee-shifting provisions when applied to administrative proceedings. *Buckhannon*'s language in this regard therefore does not map perfectly onto the meaning of "prevailing party" as used in the context of IDEA administrative proceedings.

Concepts of "relief on the merits," *Buckhannon*, 532 U.S. at 603, 121 S.Ct. 1835, "material alteration of the legal relationship of the parties," *id.* at 604, 121 S.Ct. 1835 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792–93, 109 S.Ct. 1486), and "consent decree," *id.*, for example, have an obvious meaning when applied to both judicial actions as in *Buckhannon* and the administrative proceedings before us. But the *Buckhannon* Court also referred to "*judicially* sanctioned change in the legal relationship of the parties," *id.* at 605, 121 S.Ct. 1835 (emphasis added), "*judicial imprimatur*," *id.* (emphasis added), and "*judicial* approval and oversight," *id.* at 604 n. 7, 121 S.Ct. 1835 (emphasis added), as hallmarks of actions that may give rise to "prevailing party" status. Because of their reference to judicial action, these factors cannot serve literally as part of a test for differentiating between those outcomes of purely *administrative* IDEA proceedings that give rise to a plaintiff's "prevailing party" status and those that do not.

But an IHO's decision on the merits in an IDEA proceeding does constitute "*administrative imprimatur*." Although not "judicial," such an order changes the legal relationship between the parties: Its terms are enforceable, if not·by the IHO itself, then by a court, including through an action under 42 U.S.C. § 1983. *See, e.g., SJB v. N.Y. City Dep't of Educ.*, No. 03 Civ. 6653, 2004 WL 1586500, 2004 U.S. Dist. LEXIS 13227 (S.D.N.Y. July 14, 2003); *see also Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996); *cf. Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir.2002). In order to give effect to the IDEA's intent to permit awards to·winning parties in administrative proceedings even where there has been no judicial involvement, as the parties agree that we must, we conclude that the combination of administrative *imprimatur*, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a "prevailing party" under *Buckhannon*'s principles.[11]

■ *3. The "Catalyst Theory" in the Context of IDEA Fee Awards.* Third, to paraphrase a passage in *Buckhannon*:

---

**11.** In *J.C.*, we addressed a district court judgment that had awarded attorneys' fees pre-*Buckhannon* under the "catalyst theory." 278 F.3d at 120–21. We reversed the judgment, holding that *Buckhannon* had made such a "catalyst theory" award unsustainable. *Id.* at 124–25. Thus, attorneys' fees were not recoverable for representation in administrative hearings where, after agreement among the parties on the merits, the administrator did no more than dismiss the proceedings as moot. *Id.* at 122, 125. In the course of our discussion, we noted: "Moreover, even if the [parties' resolution] changed the legal relationship between the parties, this change was not judicially sanctioned, as required by *Buckhannon*." *Id.* at 125. We drew this conclusion while addressing the import of a private settlement agreement, noting that the administrative officer did not read the parties' agreement into the record or incorporate it directly or by reference into the order dismissing the hearing as moot. *Id.* at 122.

We do not think the panel intended to suggest that, even were administrative hearings to result in a change in the legal relationship among the parties sanctioned by an administrative officer, the plaintiff would not be the "prevailing party" for attorneys' fees purposes despite the absence of judicial proceedings. That would be contrary to the IDEA which, as we have noted more than once and the DOE concedes, provides that the plaintiff in such administrative "proceedings" may indeed be awarded attorneys' fees irrespective of judicial intervention and sanction.

Where an administrative proceeding results in a purely private settlement, a defendant's change in conduct, although perhaps accomplishing what the plaintiff sought to achieve, lacks the necessary administrative *imprimatur* on the change in the legal relationship between the parties. *See Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835. We therefore think it plain, and the parties agree, that under *Buckhannon,* a settlement of an IDEA administrative proceeding between the parties, followed by a dismissal of the proceedings—without more—does not render the plaintiff a "prevailing party" for statutory fee-shifting purposes no matter how favorable the settlement is to the plaintiff's interests. To permit such a fee award would be to reinstate the use of the now forbidden "catalyst theory." Because of the absence of administrative imprimatur, such an award "falls on the other side of the line," *id.,* that separates such a settlement from orders that give rise to "prevailing party" status.

## C. *A.R's and S.W and M.M.'s Administrative Proceedings*

A.R's administrative hearing and S.W and M.M.'s administrative hearing each resulted in an order in favor of the parent or parents and against the DOE. The DOE does not contest the district court's determination that those parents were "prevailing parties."

## D. *M.L.'s and M.S.'s Administrative Proceedings*

■ Based on the foregoing analysis, we agree with the Parents' position that M.L. and M.S. are also entitled to "prevailing party" status in the IHO proceedings in connection with which they each obtained an administrative analog of a consent decree. We perceive no reason to distinguish the outcomes of those proceedings from those obtained by A.R. and S.W. and M.M. in theirs. We do not think that the fact that the terms of the M.L. and M.S. orders arose out of an agreement between the parties, rather than out of the wisdom of the IHO, matters.[12]

*Buckhannon* established, in the context of judicial proceedings, that "court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. at 604, 121 S.Ct. 1835. The M.L. and M.S. orders were, in substance, administrative consent decrees. *See* 2 Charles H. Koch, Jr., *Administrative Law and Practice* § 5.43, at 155 (2d ed.1997). We think that they evidence the same combination of administrative *imprimatur,* change in the legal relationship of the parties, and judicial enforceability that renders the winner on the merits in an IHO decision, such as A.R. and S.W. and M.M., a "prevailing party" under the IDEA and *Buckhannon.*

By contrast, had the agreements between M.L. and the DOE, and M.S. and

---

**12.** As the LSC plaintiffs' counsel points out: "[C]onsent orders incorporating settlements are an essential part of adjudicative decision-making." Appellees' Supplemental Letter Br. of May 11, 2004, at 15, *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.; see also* Alfred C. Aman, Jr. & William T. Mayton, *Administrative Law* § 9.5.2, at 279 (2d ed. 2001) ("Settlement is a dispute resolution technique that has long been a part of the administrative process."). "A consent order is an agreement reached in an administrative proceeding between parties one of which is usually the agency's litigation staff.... If [the agency accepts the agreement], it issues an order much as a court issues a consent decree.... An administrative consent order is a final agency order which is reviewable as if it were the product of a hearing." 2 Charles H. Koch, Jr., *Administrative Law and Practice* § 5.43, at 155 (2d ed.1997).

the DOE, been purely private—occasioned by the proceedings but not ordered by the IHOs—M.L. and M.S. would not have been "prevailing parties." To hold otherwise would be to give effect to the "catalyst theory" disapproved in *Buckhannon*. Had the IHOs done no more than dismiss the cases following settlement, their involvement to that extent would not be enough. But they did more: They incorporated the terms of the settlements in dispositive administrative orders.[13]

Our view of *Buckhannon*'s teaching is buttressed by the Supreme Court's previous decision in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The *Kokkonen* Court confronted a related issue: Whether a court maintains jurisdiction to enforce a settlement agreement when it does no more than "so-order" a stipulation and order of dismissal that dismisses the complaint after settlement without "so much as refer[ing] to the settlement agreement." *Id.* at 376–77, 114 S.Ct. 1673. *Kokkonen* held that it does not. *Id.* at 381–82, 114 S.Ct. 1673. But, the Court noted,

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision ... or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id.* at 381, 114 S.Ct. 1673.

The question before us is, similarly, whether a settlement of an administrative proceeding is the equivalent of an administrative decree on the merits. "No," *Kokkonen* suggests, if it is followed only by a dismissal of the administrative proceeding. The power and authority of the administrative agency do not underlie the private settlement agreement, which may only be enforced by a new and separate proceeding by one party against another. But "yes," *Kokkonen* implies, if "the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision ... or by incorporating the terms of the settlement agreement in the order." *Id.* That seems to us to be a fair general description of what the IHOs did in the course of the M.L. and M.S. hearings in which they agreed to endorse the agreements, and in the endorsement of those agreements themselves.[14]

We conclude that M.L. and M.S. were "prevailing parties" entitled to attorneys' fees under 20 U.S.C. § 1415(i)(3)(B).

---

13. The DOE contends that M.S. and M.L. cannot be "prevailing parties" because the IHOs conducting their hearings lacked jurisdiction to enforce the terms of the settlement agreements, as memorialized in the orders concluding those hearings. Under our analysis, the fact that the IHOs, as is common in administrative procedures, have no enforcement mechanism of their own is irrelevant, at least so long as judicial enforcement is available.

14. In a footnoted *dictum*, we have indicated that *Buckhannon* "requires not only the physical incorporation of the settlement in a district court's order but also some evidence that a district court intended to place its 'judicial imprimatur' on the settlement." *Torres v. Walker*, 356 F.3d 238, 245 n. 6 (2d Cir.2004) (quoting *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835). If that is so, and if the requirement applies to administrative hearings, the requirement is met here. The on-the-record hearings with counsel present in which the IHOs indicated their approval and intention to order the terms of the agreed settlements, as well as the appearance of the IHO as the sole signatory to the first M.L. Statement of Agreement and Order, we think, easily meet *Torres*'s "some evidence" test.

## V. Calculation of Attorneys' Fees

The IDEA provides that the fees that district courts award must be "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)-(C). To calculate such attorneys' fees, courts apply the "lodestar" method, "whereby an attorney fee award is derived 'by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'" *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir.1999) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). "'[T]here is ... a strong presumption that the lodestar figure represents a reasonable fee.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) (omission in original)); *accord I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir.2003) (per curiam).

### A. Community in Which the Action or Proceeding Arose

The DOE complains that the district judges wrongly looked to the legal "community" of the Southern District of New York, where they sit, rather than to the community of all practitioners appearing before the DOE in IDEA administrative actions, to measure the level of legal fees to be awarded to the Parents' counsel.[15]

The "community" to which the IDEA's fee calculation provision refers is typically measured by the geographic area in which

"the action was commenced and litigated." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 94 (2d Cir.2004) (per curiam) (analyzing similar provision in Voting Rights Act of 1965). Where the legal dispute has been pursued through an action in federal court, "[n]ormally a district court, awarding attorney's fees under [a fee-shifting statute], will consider the prevailing rates in the district in which the court sits." *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983) (analyzing award of attorney's fees under 42 U.S.C. § 1988 in action brought under 42 U.S.C. § 1983); *accord Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir.1994).

The disputes in the cases before us were pursued through IDEA administrative proceedings, not the district court. The DOE exercises jurisdiction over public schooling in the five boroughs of the City of New York, three of which lie within the jurisdiction of one United States District Court and two of which are in another. The students involved in these proceedings attended schools in Bronx and New York Counties, both in the Southern District of New York; administrative hearings were held there as well as in Kings County, which is in the Eastern District. The Parents' lawyers have their offices in New York County, in the Southern District. Our case law does not provide us with a litmus test for determining, in these circumstances, the "community" in which the

---

15. The notion that the district court looked only to that community is something of an oversimplification. In arriving at an hourly rate of $350 for the representation at issue, the court in *M.S.* credited the affidavits of four lawyers whose practice consists, at least in part, of representation in administrative law and educational law matters, and who command hourly rates between $300 and $350. At least two of those lawyers have represented parents in IDEA administrative proceedings. The four affiants did not distinguish between what they charged for representing clients in special education matters that arose in the Eastern and Southern Districts of New York. The district court, in determining fees in S.W. and M.M.'s case, relied in part on this determination. *See S.W.*, 257 F.Supp.2d at 604.

proceedings for which the Parents were awarded legal fees "arose." *See, e.g., I.B.,* 336 F.3d at 81 (considering issue of whether fees under IDEA should reflect rates for general litigation or for representations in administrative hearings only, without addressing choice of community); *G.M.,* 173 F.3d at 84 (remanding for determination of fees under IDEA without discussing the community the district court should consider in determining fees).

The Parents urge us to affirm the district court's fee awards because the awards comply with the "typical" rule. They suggest that the cases arose entirely or principally in the Southern District of New York and contend that the district court therefore properly treated the rates prevailing in the Southern District as the fee structure against which the attorneys' fees here should be measured. The DOE contends to the contrary that the relevant community must be co-extensive with the group of lawyers who bring IDEA actions against the DOE: in other words, that the district court must refer to rates across the five boroughs of the City of New York in determining a reasonable rate for representation in IDEA hearings.

The text of section 1415(i)(3)(C) does not appear to compel either conclusion. The requirement that the relevant community be that "in which the action or proceeding arose" does not tell us whether a proceeding "arises" where it is held (in this case, the Southern *and* Eastern Districts) or where the events that gave rise to the hearings occurred (here, the Southern District). Nor can we conclude from the fact that the proceedings undeniably arose in the City of New York as a whole that they cannot also be said to have arisen in the Southern District of New York or that the community of lawyers throughout the City of New York, i.e., those lawyers appearing before the DOE, is necessarily the only group whose fees provide the yardstick by which to measure the fee award.

The DOE expresses a concern that, under what it sees as the district court's district-specific approach, the same lawyer may be paid at different hourly rates for services rendered in similar proceedings against the same defendant depending upon the happenstance of where in New York City, and therefore in which federal district, "the action or proceeding [against the DOE] arose." But such distinctions are inherent in any approach that distinguishes between the level of legal payments in different districts when setting the rate at which legal fees are to be awarded: The same lawyer may be paid at different rates with respect to otherwise identical legal services provided in cases heard in the Southern District of New York (New York County (Manhattan), Bronx County, and points north) from those at which he or she is paid with respect to legal services provided in cases heard in the Eastern District of New York (Richmond County (Staten Island), Kings County (Brooklyn), Queens County, and points east). So long as the law provides for or permits fee awards based on geographic markets for services, a lawyer may be paid at different rates for otherwise indistinguishable services. As the District of Columbia Circuit observed, this approach provides

> a neutral rule which will not work to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

*Donnell v. United States,* 682 F.2d 240, 251–52 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).[16]

We acknowledge, on the other side of the ledger, that there is good reason for a district court not to be wed to the rates in its own community. If they are lower than those in another district, skilled lawyers from such other district will be dissuaded from taking meritorious cases in the district with lower rates. If lawyers are paid for their participation in IDEA proceedings that clearly arise in Queens at a rate considerably lower than what they are paid for representation in proceedings that clearly arise in Manhattan, experienced, Manhattan-based lawyers like Mr. Hampden, Mr. Silverblatt, and Mr. Mayerson may decide to devote their time and expertise to IDEA cases that arise in Manhattan rather than those cases in which parents are equally needful of their services, but that arise in Queens.[17]

But we need not arrive at a crisp rule that a district court must employ to make this determination. We have held in somewhat comparable circumstances that the district court has discretion—to be sure, discretion that may not be abused— to determine the relevant community for calculating attorneys' fees where the case

was not commenced and litigated in a single federal district. *See Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 24 (2d Cir.1983) (concluding, where the case was justifiably commenced in the Southern District but later transferred to the Northern District for improper venue, that the district court "had discretion to award a fee based on either the Southern District or Northern District").

Similarly here, there is more than one community that the district court might reasonably have considered in determining fees. But the contacts between the administrative proceedings and the Southern District, which is the place where the clients reside, where the facts giving rise to their successful claims occurred, and where the lawyers who represented them hang their shingles, appear clearly to predominate. By comparison, the fact that the DOE held hearings on the other side of an intra-city bridge provides minimal support for treating the place where the proceedings were held as that in which they "arose" on the facts of these cases. Although none of this means that the district court was required to reach the result that it did, it does confirm that the court did not abuse its discretion in treating the Southern District as "the community in which the ... proceeding arose," and

---

**16.** We also note that there is an advantage for a district court to set rates principally looking to standards prevailing within its own district. Doing so enables the court to develop and apply expertise regarding the prevailing market rates there, among lawyers with whom and with whose practice the court has ready familiarity. *See Donnell,* 682 F.2d at 251. Thus, in *S.W.,* to determine a reasonable hourly rate for legal representation of S.W. and M.M. at IDEA administrative hearings, the district court relied on the court's experience with attorneys' fees within the district in *M.S., Mr. X v. New York State Education Department,* 20 F.Supp.2d 561, 563–64 (S.D.N.Y. 1998), and *Marisol A. v. Giuliani,* 111 F.Supp.2d 381, 386 (S.D.N.Y.2000). *See*

*S.W.,* 257 F.Supp.2d at 604. Similarly, to decide a reasonable hourly rate for A.R., M.S. and M.L., the district court relied on the court's assessment of fees in *Mr. X. See M.S.,* 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *14.

**17.** We recognize that a district court can take into account the expertise of a lawyer or the need to import a lawyer from a distant forum in setting his or her fees, *see Arbor Hill,* 369 F.3d at 96–97; *Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir.1997); *Polk,* 722 F.2d at 25, but do not think that that possibility would likely affect a lawyer's choice of engagements.

therefore in relying primarily on the level of legal fees charged by comparable lawyers in comparable circumstances in the Southern District of New York in setting legal fees for the plaintiffs under the IDEA.

### B. Reasonableness of the Rate

1. *Fees in M.S.'s, M.L.'s, and A.R.'s cases.* As we have noted, the district court credited the affidavits submitted on behalf of M.S., M.L., and A.R. in which special education lawyers represented that they charged fees of $300 to $350 per hour in the Southern District. *M.S.*, 2002 WL 31556385, at *4 & n. 2, 2002 U.S. Dist. LEXIS 22220, at *12–*13 & n. 2. The district court also observed that in 1998, the Southern District awarded attorneys' fees at an hourly rate of $375 for representation at an IDEA hearing and subsequent litigation in federal court. *M.S.*, 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *14 (citing *Mr. X v. N.Y. State Educ. Dep't*, 20 F.Supp.2d 561, 565 (S.D.N.Y.1998)). It was not an abuse of discretion for the district court to credit evidence submitted by the plaintiffs instead of countervailing evidence submitted by the defendant. *See I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir.2003) (per curiam).

The district court found unpersuasive the affidavits and arguments submitted by the DOE indicating that the prevailing rate should be $125 to $175 per hour. *See* *M.S.*, 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *16–*17. Similarly, the district court found irrelevant the two lawyers' declarations supporting the DOE's assertion that a lower hourly rate was appropriate. *See M.S.*, 2002 WL 31556385, at *5 n. 4, 2002 U.S. Dist. LEXIS 22220, at *16 n. 4. The court also found unpersuasive the DOE's records of the amounts that it previously paid to lawyers for representation at IDEA administrative hearings. *See M.S.*, 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *15–*17. The court noted that these figures did not accurately represent market figures because many of these payments involved settlements for amounts substantially less than the requested attorneys' fees. *See id.* We conclude that the district court did not abuse its discretion when it determined, based on the evidence before it, that a range of $300 to $350 was reasonable for representation at the administrative hearings.

Nor did the district court abuse its discretion in awarding the LSC lawyers fees at the top end of this range based on their experience.[18] Even though much of the lawyers' careers was spent practicing in areas other than education law, their overall legal experience merited a higher hourly rate because "most important legal skills are transferrable." *I.B.*, 336 F.3d at 81. Indeed, we have observed that Mr. Hampden, who is one of the lawyers in the instant case, possesses considerable expe-

---

18. Plaintiffs' attorneys in this case are likewise the beneficiaries of many years of experience (thirty-five years in Mr. Hampden's case; twenty-four in Mr. Silverblatt's) in areas outside the IDEA. Furthermore, their prior experience, while not focused exclusively on the IDEA, was in related areas of law: Mr. Hampden has spent much of his career at legal services organizations (Legal Aid Society of New York City; Bronx Legal Services; Westchester/Putnam Legal Services), repre- senting clients in administrative hearings and litigation related thereto; Mr. Silverblatt was an attorney in the Juvenile Rights Division of the Legal Aid Society for twenty years prior to joining LSC, in which capacity he served as law guardian to countless children, representing them in numerous administrative proceedings before defendant Board. *M.S.*, 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *14–*15 (footnote omitted).

rience in education law despite having spent much of his career focusing on different kinds of law. *Id.*

2. *Fees in S.W. and M.M.'s case.* In S.W. and M.M.'s case, the district court awarded fees for representation during the administrative hearing at the rate of $350 per hour. *S.W.,* 257 F.Supp.2d at 604–05. S.W. and M.M.'s child, N.W., attended school in Manhattan. Their administrative proceedings appear to have taken place in Brooklyn. In awarding them fees at an hourly rate of $350 for the administrative hearings, the district judge relied upon the decisions in *M.S.,* 2002 WL 31556385, at *4 n. 2, 2002 U.S. Dist. LEXIS 22220, at *13 n. 2, and *Mr. X,* 20 F.Supp.2d at 563–64, that such a rate was reasonable for services of this type in the Southern District. *S.W.,* 257 F.Supp.2d at 604. The district court also relied on its decision in *R.E. ex rel. Z.E. v. New York City Board of Education, District 2,* No. 02 Civ. 1067, 2003 WL 42017, at *2, 2003 U.S. Dist. LEXIS 58, at *6–*7 (S.D.N.Y. Jan. 6, 2003), in which it concluded that $350 per hour in 1998 and $365 per hour in 1999 were reasonable hourly rates for Mayerson for representation in IDEA administrative hearings. *S.W.,* 257 F.Supp.2d at 604–05. For the reasons stated above, the district judge in S.W. and M.M.'s case had the discretion to consider the Southern District as the relevant community in setting fees. Because we affirm the court's decision in *M.S.,* we also find here that awarding fees at a rate of $350 was not an abuse of discretion.

■ The district court awarded S.W. and M.M. attorneys' fees at a rate of $375 per hour for their fee application in the district court. *Id.* at 607. The district court awarded a higher rate for the fee application because it found that attorney Mayerson's expertise, experience, and fees had increased from the time of the administrative hearings. *Id.* The DOE contends that the hourly rate for the fee dispute in the district court should, as a matter of law, be the same as the rate for representation for the earlier administrative representation because "the fees application is ancillary to the administrative proceeding." Appellant's Br. at 38, *S.W. ex rel. N.W. v. Bd of Educ. (Dist.Two).* We disagree. An award of attorneys' fees under the "lodestar [method] should be based on prevailing market rates, and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir.1998) (internal quotation marks and citations omitted). A district court awarding attorneys' fees for both administrative proceedings and a subsequent fee dispute therefore need not determine the fees for the later action on the basis of the earlier administrative proceeding.

## C. For the Kind and Quality of Services Furnished

The DOE argues that because section 1415(i)(3)(C) limits rates for calculating attorneys' fees to those for "the kind and quality of services furnished," the relevant market for determining reasonable rates for representation in administrative proceedings is the market for representation at the administrative level. The DOE asserts that administrative proceedings are "not legally complex," Appellant's Br. at 22, *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.,* and that, as a matter of law, they involve legal assistance of a different "kind and quality" than is involved in representation in court proceedings, *id.* at 45. The DOE asserts that the district judges therefore erred in determining the reasonable hourly rates for administrative representation by relying on hourly rates for proceedings commenced in federal courts.

While any comparison of degrees of difficulty of administrative and judicial hearings may itself raise considerable difficulties, we conclude that we need not address that issue here. The district court, in determining attorneys' fees for the administrative proceedings, relied substantially on hourly rates for representation in administrative proceedings. *Cf. I.B.*, 336 F.3d at 81 (declining to decide whether hourly rates for representation in IDEA administrative hearings must be decided on the basis of "what other counsel charge 'at Impartial Hearings'" because the district court's fee award was already based on such information). Two of the affidavits that were submitted by the LSC plaintiffs in support of their motions for attorneys' fees describe lawyers' hourly rates in the Southern District of New York for administrative representation. As we have noted, both district judges relied on the court's previous decision in *Mr. X*, which involved attorneys' fees for IDEA administrative hearings. *See S.W.*, 257 F.Supp.2d at 604 (citing *Mr. X*, 20 F.Supp.2d at 563–64); *M.S.*, 2002 WL 31556385, at *5, 2002 U.S. Dist. LEXIS 22220, at *14 (same). And in *S.W.*, the district court also relied on *M.S.*, which, of course, also deals with fees in administrative hearings. *S.W.*, 257 F.Supp.2d at 604. Whether or not it would have been an abuse of discretion for either judge to rely solely on the level of attorneys' fees prevailing in judicially litigated matters, they did not do so here.

### D. Counsel Fees on Appeal

Counsel may be entitled to further legal fees in connection with their defense of this appeal by the DOE. *See G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir.1999) (awarding attorneys' fees for an appeal brought in connection with an IDEA proceeding). We remand for the respective district judges to determine whether they are, and if so, the amount of such fees.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, but remand these cases to the respective district judges for a determination of attorneys' fees for legal services rendered with respect to this appeal, if any.